UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20373-CR-LENARD/TORRES

UNITED STATES OF AMERICA

v.

NARSEAL BATISTE, et al.

      Defendants.
_____/

### GOVERNMENT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE PROPOSED DEFENSE EXPERTS FOR FAILURE TO COMPLY

The United States of America, through the undersigned counsel, submits this memorandum of law in further support of its motion to exclude Tammy Fox-Isicoff and Andrew Silke (proposed by defendant Batiste) and James Wedick (proposed by defendant Abraham) as experts at trial.[1] Defendants' belated attempts to comply with their expert disclosure obligations in Fed. R. Crim. P. 16 (and the Court's Order of September 28, 2007 requiring all expert disclosures to be filed by October 1, 2007) still are inadequate and fail to satisfy the Federal Rules of Evidence.

### ARGUMENT

**I.  The Disclosures for Fox-Isicoff and Silke are Untimely**

Defendant Batiste ostensibly admits that the disclosures for proposed experts Fox-Isicoff and Silke were filed late, long after this Court's order requiring disclosures by October 1, 2007 and well into trial. Batiste first filed a disclosure on October 11, 2007 and a supplement to that disclosure on October 15, 2007. Prior to October 11, 2007, the government had received only the curriculum vitae

---

[1] In the Government's moving brief, *see* Docket Entry 545, the Government also sought to exclude James D. Goldman (proposed by defendant Batiste) as an expert. In his response in opposition, defendant Batiste did not address the shortcomings with respect to Mr. Goldman that the Government had outlined in its moving brief. *See* Docket Entry 556. Accordingly, defendant Batiste implicitly has conceded that the disclosures for Mr. Goldman were insufficient and has acknowledged that Mr. Goldman should be excluded from trial.

("CV") for Batiste's proposed experts, which are insufficient to satisfy the requirements of Rule 16(b)(1)(C). *See United States v. Johnson*, 219 F.3d 349, 358 (4th Cir. 2000) (holding that disclosure of only proposed expert's resume' was insufficient and did not comply with rule); *United States v. Jasper*, No. 00 CR 825, 2003 WL 223212, at *2-5 (S.D.N.Y. Jan. 31, 2003) (finding that production of only CV of proposed expert did not satisfy rule and written summary was required).

Batiste's assertion that "the Government has had the disclosures since prior to October 1, 2007 as acknowledged by the Government," is false and is an attempt to mislead this Court. *See* Defendant Narsael [sic] Batiste's *Response* in Opposition to Government's Motion in Limine to Exclude Proposed Defense Experts for Failure to Comply ("Batiste Resp.") at 2. In its moving brief, the government stated that, prior to October 1, 2007, the government received *only* the CVs of the proposed experts, and the government was clear that CVs alone do not constitute disclosures under the Federal Rules. *See* Docket Entry 545 at 2. Indeed, as indicated, Batiste did not file any semblance of a summary of the proposed testimony of his proposed experts until October 11, 2007.

Batiste admits the disclosures are belated, stating that he finally was able to provide disclosures[2] "after Counsel's consultation with the experts had been completed which could only be accomplished after consultation with the experts subject to budget approval and their availability." Batiste Rep. at 2. Essentially, therefore, Batiste is claiming that the expert disclosures could not be filed until his counsel spoke with the experts to discuss their proposed testimony and their fees, which seems to be another way of saying that the disclosures could not be provided until his counsel decided to finish them in an attempt to satisfy Rule 16. Such an excuse is woefully

---

[2] Batiste terms the disclosures as a "Supplement to the disclosures." Batiste Resp. at 2. This is a mis-characterization in that there was no initial disclosure; Batiste had provided only CVs. Batiste also carefully avoids stating that the disclosures first were provided on October 11, 2007 to avoid highlighting the glaring lateness of the disclosures, instead merely saying that the disclosures were provided "subsequent to October 1, 2007." Batiste Resp. at 2.

inadequate to excuse the late disclosures. Of course, Batiste also attributes the lateness of the filings to computer issues. *See* Batiste Resp. at 1-2. Interestingly, despite the October 1, 2007 deadline that this Court set for filing and providing expert disclosures to the government, Batiste never flagged any computer or scheduling issues for this Court of the government to indicate that the disclosures may be filed belatedly or to ask for an extension.

Batiste has provided no justifiable reason why he waited until October 11, 2007, ten days after this Court's deadline, and an additional six days of trial, to provide the government with his deficient expert disclosures (to be supplemented on October 15, 2007 only after the government filed its motion to exclude). Accordingly, excluding the testimony of the proposed experts under these circumstances is appropriate. *See United States v. Petrie*, 302 F.3d 1280, 1288-89 (11th Cir. 2002). In *Petrie*, the Eleventh Circuit affirmed the district court's decision to exclude an expert based on belated notice provided on Friday afternoon prior to the start of trial on the following Monday. *See id.* The Eleventh Circuit highlighted that almost a year and a half had passed since the return of the superseding indictment and the start of trial. *See id.*

Here, defendants were aware of the charges against them by the beginning of July 2006, almost thirteen months before trial commenced. It has been no secret that Batiste is facing terrorism related charges. Similarly, the collateral immigration issues for which Batiste believes an expert is necessary also have been known to Batiste since at least mid-July 2007. At pre-trial hearings before Magistrate Judge Torres, counsel for Batiste argued to the court regarding immigration issues and indicated that experts would be retained to opine on those issues. Thus, Batiste has no excuse for not coordinating with a terrorism expert (Silke) or an immigration expert (Fox-Isicoff) sooner.

3

## II. The Proposed Testimony of Fox-Isicoff and Wedick Violates the Collateral Impeachment Rule

"There is no right to impeach a witness with respect to collateral or irrelevant maters." *United States v. Russo*, 796 F.2d 1443, 1454 (11th Cir. 1986) (citation omitted). "A matter is collateral if the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." *United States v. Marino*, 277 F.3d 11, 24 (1st Cir.2002), *cited in U.S. v. Ndiaye*, 434 F.3d 1270, 1282 (11th Cir. 2006). Here, the proposed testimony of Fox-isicoff and Wedick addresses collateral issues, which will do nothing other than attempt to contradict the testimony of prior witnesses. Rule 608(b) of the Federal Rules of Evidence is clear that the introduction of extrinsic documentary or testimonial evidence to contradict a witness' answers concerning collateral matters solely for the purpose of impeaching that witness' credibility is prohibited. *See* Fed. R. Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence.").

Ostensibly, Fox-Isicoff intends to offer expert testimony regarding immigration issues to suggest that CW2 received other benefits that served as a motive for CW2 to cooperate with the government and provide favorable testimony. The proposed testimony, however, relates to collateral matters that are not relevant at trial. The only facts remotely relevant with respect to immigration issues is what CW2 *understands* to be the benefits he has received from the government, to serve as a basis for alleging bias or motive on behalf of CW2, not the extent to which CW2 may be unaware of some purported or otherwise tenuous immigration benefit he may have received. Batiste is free to cross-examine CW2 regarding the alleged benefits he has received (indeed the government has fully disclosed any and all of the benefits that have been given to CW2), but Batiste is bound by the answers he receives on cross-examination of CW2. Batiste, however, may not attempt to

4

admit extrinsic evidence via the testimony of an expert simply to impeach CW2 on a collateral issue. *See* Rule 608(b); *Russo*, 796 F.2d at 1454; *Martin v. Texas Emp. Ins. Ass'n*, 193 F.2d 645, 646 (5th Cir. 1952).[3]

Similarly, the purported testimony of Wedick is being offered solely to impeach the testimony of Special Agent Anthony Velasquez regarding collateral issues, the policies and procedures of the FBI. The supplemental disclosure provided indicates that Wedick's testimony will contradict SA Velasquez's testimony regarding the FBI practices of recording post-arrest statements and using confidential informants who previously have been discontinued.[4] Indeed, the only relevant facts are that defendant Abraham's post-arrest statement was not recorded and that CW2 was used as an informant in this case after having been deactivated in the ordinary course of use of informants in or about 1999. Defendant Abraham had the opportunity to cross-examine SA Velasquez regarding these collateral matters; however, defendant Abraham may not bring in extrinsic evidence, the opinion of an expert, to impeach SA Velasquez's statement about those irrelevant issues.

Based on the collateral impeachment rule, defendants are bound by the answers of witnesses to questions concerning collateral matters inquired into solely to affect credibility. To permit defendants to offer the testimony of their proposed expert would open the door to collateral mini-trials and the unnecessary and unproductive delays that inevitably would follow.

---

[3] Case law of the Fifth Circuit prior to October 1, 1981 is binding precedent for the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[4] The initial disclosures that defendant Abraham submitted regarding Wedick were insufficient, failing to state the actual opinion that Wedick would offer. On October 15, 2007, in response to the government's motion to exclude, defendant Abraham finally provided the opinions to be offered by Wedick.

5

### III.     The Disclosure for Silke Does not Satisfy Rule 16(b)(1)(c) of the Federal Rules of Criminal Procedure

Rule 16(b)(1)(c) provides that an expert summary "shall describe the witnesses' opinions, *the bases and reasons for those opinions*, and the witnesses' qualifications." This Court's Local Rules and the Standing Discovery Order likewise require these disclosures. See S.D. Fla. L.R. 88.10. The disclosure for Silke sets forth only the opinions that he will offer without indicating the bases for those opinions. Silke's conclusions, as stated in the disclosure, are that neither Batiste nor his co-defendants (i) pose a genuine threat to this country unlike extreme Islamic fundamentalists; (ii) possess a Salafist or Jihadist ideology; (iii) share the same ideological goals of Islamists terrorists; or (iv) were driven by radical Islamist or Jihadist ideology ( "Silke's Conclusions"). Nowhere, however, does the disclosure state how Silke reached those opinions. Without any explanation about the bases of Silke's Conclusions, the government is not afforded "a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Advisory Notes, Fed. R. Crim. P. 16. Thus, Silke's disclosure and the supplement provided in response to the government's motion do not satisfy Rule 16.

### IV.     Silke's Proposed Testimony Violates Rules 703 and 704(b) of the Federal Rules of Evidence

It is fair to believe that Silke's Conclusions are based on statements from the defendants.[5] Accordingly, it appears as though Silke will be referring to the hearsay of the defendants as a basis for his opinion. While Rule 703 permits experts to refer to hearsay evidence as a basis for their testimony, such hearsay must be of the type reasonably relied upon by experts in the particular field

---

[5] The nature of Silke's Conclusions suggest that they must have been gleaned, at least in part, from the statements of the defendants. Indeed, the government only can speculate because no basis for Silke's Conclusions has been offered.

6

in forming opinions or inferences on the subject. *See* Rule 703; *United States v. Scrimma*, 819 F.2d 996 (11th Cir. 1987) (prohibiting expert accountant to testify about defendant's available cash based on statements that defendant made to casual business acquaintances). There has been no showing about what Silke actually has relied on in forming his opinions or whether similarly qualified experts customarily rely on the statements of defendants to arrive at their opinions. Silke's testimony, therefore, seems merely to be a backdoor way to permit defendants to testify without taking the witness stand, which should be prohibited under Rule 703.

Silke's testimony also will run afoul of Rule 704(b). The disclosure for Silke concludes: "Indeed Professor Silke will testify that BATISTE and his co-defendants were driven by money and material gain, and not radical Islamist or Jihadist ideology." Batiste Resp. at 4. Essentially, this statement suggests that Silke will offer an opinion about an ultimate issue in the case - whether defendants had the intent or lacked a predisposition to commit the crimes charged - which is prohibited under Rule 704(b). *See* Rule 704(b); *see also United States v. Alvarez*, 837 F.2d 1024, 1031 (11th Cir.1988) (holding that the rule 704(b) prohibits an expert from offering a conclusion that a defendant did or did not have the intent necessary to be guilty of the crime charged). Accordingly, Silke's intended testimony will violate the Rules of Evidence.

## **CONCLUSION**

For the foregoing reasons, this Court should exclude the testimony of proposed defense experts Fox-Isicoff, Silke and Wedick.

                                         Respectfully submitted,

                                         R. ALEXANDER ACOSTA
                                         UNITED STATES ATTORNEY

By:    s/Jacqueline M. Arango
          Jacqueline M. Arango
          Assistant United States Attorney
          Florida Bar Number 664162
          99 Northeast 4th Street
          Miami, Florida 33132-2111
          (305) 961-9292
          (305) 536-7213 (fax)
          E-Mail: jacqueline.arango@usdoj.gov

By:    s/Richard Getchell
          Richard E. Getchell
          Assistant United States Attorney
          Florida Bar Number 817643
          99 Northeast 4th Street
          Miami, Florida 33132-2111
          (305) 961-9281
          (305) 536-4675 (fax)
          E-mail: richard.getchell@usdoj.gov

By:    s/Allyson Fritz
          Allyson Fritz
          Assistant United States Attorney
          Fla. Ct. No: A5500092
          99 Northeast 4th Street
          Miami, Florida 33132-2111
          (305) 961-9287
          (305) 536-4675 (fax)
          E-mail: allyson.fritz@usdoj.gov

## CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on October 17, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                s/Allyson Fritz
                                                Allyson Fritz
                                                Assistant United States Attorney